CALLISTER NEBEKER & McCULLOUGH
MARK L. CALLISTER (6709)
Gateway Tower East Suite 900
10 East South Temple
Salt Lake City, UT 84133
Telephone: (801) 530-7300
Facsimile: (801) 364-9127

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TRACE MINERALS RESEARCH, L.C., a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>MINERALS RESOURCES INTERNATIONAL, INC., a Utah corporation, and JOHN DOES I through X,<br><br>Defendants. | **COMPLAINT**<br>(JURY DEMANDED)<br><br>Judge Tena Campbell<br>DECK TYPE: Civil<br>DATE STAMP: 06/15/2006 @ 13:51:50<br>CASE NUMBER: 1:06CV00068 TC |

Plaintiff Trace Minerals Research, L.C. (the "Plaintiff" or "TMR") complains against the Defendant as follows:

**JURISDICTION AND VENUE**

1. This is a civil action for trademark infringement and false designation of origin in violation of the United States Trademark Act of 1946 (the "Lanham Act"), as amended, 15 U.S.C. §§ 1114 and 1125(a); trademark infringement under Utah law (Utah Code Ann. § 70-3a-

466578.1

402); and for unfair competition under Utah Code Ann. § 13-5a-103, Utah common law and for breach of contract.

2. This Court has subject matter jurisdiction over Plaintiff's claims for relief for violation of the Lanham Act pursuant to 15 U.S.C. § 1121(a); and 28 U.S.C. §§ 1331 and 1338(a).

3. Pursuant to 28 U.S.C. § 1338(b), this Court has original and/or supplemental jurisdiction over Plaintiff's state-law claims, insofar as those claims are joined with substantial and related claims under the Lanham Act, as amended, 15 U.S.C. § 1051 et seq.

4. This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a), insofar as all of Plaintiff's claims arise out of a common nucleus of facts.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), (b) and (c) because, *inter alia*, Defendants are engaged in infringing conduct in this state and district.

## THE PARTIES

6. Plaintiff is a Utah limited liability company having its principal place of business in Ogden, Utah.

7. Defendant Mineral Resources International, Inc. is a Utah corporation with its principal place of business in Ogden, Utah ("Defendant" or "MRI").

8. Defendants John Does I through X are unknown individuals and/or entities who have engaged in the conduct complained of herein.

466578.1

## GENERAL ALLEGATIONS

9. Defendant MRI is engaged in the manufacture, production and sale of trace minerals, herbs, vitamins and other health-related products.

10. MRI and its previous owners sold their interest in TMR to the present owners in April 1999 pursuant to a Stock Purchase Agreement dated April 5, 1999 (the "Stock Purchase Agreement").

### TMR's Trademarks and Rights Under the Supply Agreement

11. As part of that sale, MRI and its previous owners sold all their right, title and interest in certain intellectual property to TMR, including the tradename Trace Minerals Research, the trademark CONCENTRACE® and the trademarks listed in Exhibit E to the Supply Agreement, effective April 6, 1999 (hereinafter referred to as the "Supply agreement I"). TMR also owns the trademark, "CMD". A true and correct copy of that list of trademarks is attached hereto as Exhibit "A" and incorporated by reference herein.

12. The following trademarks (collectively, "TMR Registered Trademarks") were granted federal registration by the United States Patent and Trademark Office:

> CONCENTRACE®                Registration No. 1,714,977
> TRACE MINERAL RESEARCH®     Registration No. 2,011,381

13. TMR also acquired and is using in commerce the following trademarks and has applied to register them with the United States Patent and Trademark Office (together with TMR Registered Trademarks and the TMR Utah Trademarks (as defined below), the "TMR Trademarks"):

3

466578.1



| | |
|---|---|
| TRACE MINERALS RESEARCH (and design) | Serial No. 78/881,822 |
| ARTH-X | Serial No. 78/881,713 |
| STRESS-X | Serial No. 78/881,404 |

14. TMR was also granted registration for the marks TRACE MINERAL DROPS (and design), Registration No. 2514775-0190, and CONCENTRACE MINERAL TABLETS (and design), Registration No. 2514773-0190, in the State of Utah (the "TMR Utah Trademarks"). The TMR Trademarks are valid and protectable under common law.

15. As part of the sale transaction, TMR granted MRI a limited license for "MRI's continued use of TMR's trademarks with MRI's existing accounts." As consideration for that limited license, MRI agreed to pay TMR a license fee of one percent (1%) of MRI's sales to such accounts, with an annual cap of $7,500.00.

16. The Stock Purchase Agreement drafted by MRI refers to an "Exhibit K" for a list of the countries in which MRI had an "existing account" for purposes of the limited license granted to MRI in Section 5.4 of that agreement. Although MRI failed to include an Exhibit K on the Stock Purchase Agreement executed by the parties, in a subsequent memorandum prepared by MRI's president, titled "Matrix of Disclosures of MRI's Use of TMR Logo/Trade Names", MRI represented that the following countries were not "listed in K file" for purposes of qualifying for the "continued use" license set forth in Section 5.4 of the Stock Purchase

Agreement: England, Korea, South Africa, China, Hungary, Sweden, Ireland, Iceland, Norway, Denmark, Thailand and Hong Kong.

17. TMR and MRI also entered into the Supply Agreement I pursuant to which MRI agreed to supply products to TMR for sale by TMR in the Total Licensed Area as defined therein.

18. Pursuant to Section 16.2 of the Supply Agreement I, the parties agreed "not to intentionally use, employ or attempt to register any trademark or trade name which it knows or should know to be confusingly similar to the trademarks or trade namesof the other" without "the prior written consent of the other."

TMR's Exclusive Right to Sell Products to Health Food Stores

19. On or about April 5, 2004, TMR and MRI entered into a second supply agreement that included many of the provisions contained in Supply Agreement I, including the provision prohibiting MRI from using or attempting to register any trademark or trade name of TMR (hereafter referred to as "Supply Agreement II").

20. Section 2.1 of Supply Agreement II grants TMR the exclusive right to market and sell "Products" to and through Health Food Stores in the "Exclusive Territory."

21. "Products" are defined in Supply Agreement II as the items listed in an attached Exhibit C and any other items "having the ingredient contents listed on Exhibit I."

22. "Health Food Store" is defined in Supply Agreement II to mean "any commercial establishment that is primarily engaged in direct retail sales of products at a commercial site

where a minimum of seventy-five percent (75%) of gross revenues came from sales of dietary or nutritional supplements."

23. MRI agreed to supply products to TMR for sale by TMR to Health Food Store customers in the Exclusive Area, as defined therein, for a "period of (3) years".

24. In addition to those customers, MRI agreed that "all of TMR's customers existing as of the effective date of this Agreement shall be grandfathered into this contract." The grandfathered customers are identified in Exhibit D to Supply Agreement II (referred to hereafter as "Exhibit D Customers"). MRI expressly agreed not to "knowingly solicit or sell to those customers."

Right to Notice of Default and an Opportunity to Cure

25. Section 19.2 of Supply Agreement II requires that any party declaring a default under Supply Agreement II provide the defaulting party with "written Notice of Default and Opportunity to Cure." This Agreement expressly provides that "the defaulting party is entitled to thirty (30) days from the date said notice is received in which to cure the default."

Unauthorized Registration of TMR's Trademarks

26. As recently as August 2005, MRI's former president, Rhonda Boren, and current president, Bruce Anderson, assured TMR that MRI had not authorized its Chinese customer to use the TMR Trademarks in China.

27. TMR subsequently learned that on November 12, 1999 (less than seven months after MRI sold Plaintiff the TMR Trademarks and agreed "not to attempt to register" any trademark or tradename of TMR), MRI provided TPPIZ Horse International Trading Co. ("Horse

Trading") with a "format authorization" purporting to authorize Horse Trading to register the trademarks CMD™ and CONCENTRACE® and the trade name Trace Minerals Research in China.

28. TMR is informed and believes and on that basis alleges that MRI has attempted to register and/or registered TMR's trademarks in other countries in direction violation of the Supply Agreement.

Unauthorized Uses Beyond the Scope of the License

29. Without the consent of TMR, MRI has used and has authorized its customers to use TMR Trademarks on accounts that did not qualify for the "continuing use" license set forth in Section 5.4 of the Stock Purchase Agreement.

30. Those countries where MRI has admitted that TMR's Trademarks were not being used at the time of the Stock Purchase Agreement include England, Korea, South Africa, China, Hungary, Sweden, Ireland, Iceland, Norway, Denmark, Thailand and Hong Kong.

31. TMR is informed and believes and on that basis alleges that MRI is using and authorizing the use of TMR's Trademarks by other customers not authorized by TMR to use those marks under the license provided in the Stock Purchase Agreement.

32. The license granted by TMR to MRI also limits the use of TMR's Trademarks by MRI's "existing accounts" to the "continued use" made by those accounts prior to the sale of MRI's interest in that intellectual property to TMR. MRI has encouraged, approved, facilitated and permitted uses by those accounts beyond the scope of the license, including but not limited to the use of TMR's Trademarks to market and sell products via the internet.

33.     MRI has used and continues to use TMR's Trademarks on its own website without the approval or consent of TMR. MRI has refused to comply with TMR's repeated requests to remove TMR's Trademarks from its website.

34.     TMR is informed and believes and on that basis alleges that MRI has contracted with internet search providers to have its website receive preference as a "sponsor" for internet searches involving TMR's Trademarks, including searches for TRACE MINERAL RESEARCH®, LIQUID VITA MINERALS™ and CONCENTRACE®.

35.     Without the knowledge or consent of TMR, MRI has advertised TMR's Trademarks at trade shows and in trade publications directed at customers in TMR's Exclusive Area.

36.     TMR has expended substantial sums to advertise and promote in interstate commerce its products identified by the TMR Trademarks, which products have become widely known to the public as products of high quality and reliability.

37.     In using the TMR Trademarks in connection with the sale, offering for sale, distribution, advertising, and promotion of goods and services, MRI has acted and is acting with the purpose of taking the benefit of the favorable reputation and valuable goodwill which TMR has established in the TMR Trademarks, and causing the products of Defendants to be palmed off as made, authorized, sponsored by, endorsed by or otherwise connected with TMR.

MRI's Refusal to Supply Product and Diversion of Customers

38.     When TMR objected to MRI's misuse of the TMR Trademarks, MRI responded by accusing TMR of breaching the Supply Agreement. On or about March 31, 2006, MRI

notified TMR that "effective immediately", "MRI is ceasing all Product and Bulk Sales shipments to TMR."

39. MRI ceased all shipments of product to TMR without notice and an opportunity to cure.

40. MRI contacted TMR's customers and informed them that TMR was no longer authorized to sell product and that the customers would have to purchase product from MRI. Some of the customers that MRI attempted to divert from TMR were Exhibit D Customers that MRI transferred to TMR and agreed not to solicit.

41. MRI informed TMR that it was taking TMR's customers pursuant to Section 2.4 of Supply Agreement II which purportedly allows MRI to revoke "other bulk licenses from TMR" as a "remedy for repeated violations of licensing agreements." TMR denies that it is in default under Supply Agreement II. MRI invoked the remedy under Section 2.4 without providing TMR with notice and a thirty-day opportunity to cure.

42. Despite the written admission of MRI's former counsel that its remedy under Section 2.4 is limited to the cancellation of "license agreements for TMR's customers who sell internationally," MRI diverted Exhibit D Customers from TMR that MRI knew were selling into TMR's Exclusive Territory in the United States.

43. As a result of MRI's wrongful refusal to supply product, TMR has suffered damages in the forms of lost sales, loss of valuable customer relationships and loss of premium shelf position with TMR customers.

44.     TMR has also lost business and sales from customers in TMR's Exclusive Territory who contacted MRI after being directed to the MRI website in response to internet searches using the TMR Trademarks.

45.     In April 2005, the parties executed a Tolling Agreement to facilitate discussions to resolve various disputes. The agreement provides that "all statutes of limitations regarding claims between the parties will be extended" until either party provides notice that the Tolling Agreement is terminated. The Tolling Agreement has not been terminated by either party.

## FIRST CLAIM FOR RELIEF
### (Trademark Infringement)
### (Lanham Act § 32)

46.     Plaintiff realleges and incorporates by reference the allegations of paragraph 1 through 45, as set forth herein.

47.     Plaintiff is the registrant and sole and exclusive owner of the CONCENTRACE® mark and the other TMR Trademarks referred to in paragraphs 12, 13 and 14, and uses the TMR Trademarks in commerce.

48.     Plaintiff has obtained federal registration of and uses in commerce the TMR Trademarks identified in paragraph 12.

49.     Defendant MRI is also using the TMR Trademarks beyond the scope of its license by using and authorizing others to use those marks in ways that do not qualify as "continuing use" by "existing accounts."

50.     Defendant MRI is using TMR's registered trademarks on its website and in other advertising materials for the promotion and sale of its products to the general public.

51. Defendant's conduct, all without the authorization, license or permission of TMR, is likely to cause confusion, mistake, or deception as to the source, origin or approval of TMR's goods, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. Specifically, Defendant's activities are intended to, and are likely to, lead the public to conclude, incorrectly, that Defendant's manufacture and sale of products associated with the CONCENTRACE® mark and the other TMR Trademarks has been authorized, licensed, and/or endorsed by TMR, to the damage and harm of TMR.

52. Defendant's unauthorized use of the TMR Trademarks on its products will cause such products to be attributed to having emanated from TMR. TMR is damaged thereby because TMR has no control over the nature and quality of the products sold by Defendant, and TMR is likely to lose sales of its products, and lose rights to the TMR Trademarks.

53. TMR is entitled to recover Defendant's profits and reasonable royalties together with TMR's damages, each of which may be trebled, as well as costs of the action and reasonable attorneys' fees pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. §§ 1117(a) and (b).

54. Defendant's intentional and willful activities have caused, and will continue to cause, irreparable harm to TMR, for which TMR has no adequate remedy at law in that: (i) the TMR Trademarks are unique and valuable property rights; (ii) Defendant's infringement constitutes an interference with TMR's goodwill and customer relationships, and will substantially harm TMR's reputation and the TMR Trademarks as a source of high quality products and services as well as dilute the substantial value of the TMR Trademarks; and (iii) Defendant's wrongful conduct, and the damages resulting to TMR, are continuing.

55. Accordingly, TMR is entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1116(a).

56. Defendant's unlawful and willful conduct renders this case an exceptional case, further entitling Plaintiff to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF
### (Trademark Infringement/False Designation Of Origin)
### (Lanham Act § 43(a))

57. TMR realleges and incorporates by reference the allegations of paragraphs 1 through 56, as set forth herein.

58. MRI's sale of products using the TMR Trademarks is beyond the scope of the license granted to MRI by TMR. These actions constitute a false designation of origin and a false representation in that TMR's customers and the public likely will be led to believe that TMR has authorized or approved of Defendant's sale of product using the TMR Trademarks. TMR is being damaged by such false designation of origin in that MRI's actions have deprived TMR of the opportunity to control the nature and quality of the products sold under Plaintiff's marks, which could result in confusion of existing and potential customers, a loss of TMR's goodwill, and a loss of sales of TMR's product.

59. TMR is entitled to recover Defendant's profits and reasonable royalties together with TMR's damages, each of which may be trebled, as well as costs of the action and reasonable attorneys' fees pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. §§ 1117(a) and (b).

60.     Defendant's intentional and willful activities have caused, and will continue to cause, irreparable harm to TMR, for which TMR has no adequate remedy at law in that: (i) the TMR Trademarks are unique and valuable property rights; (ii) Defendant's infringement constitutes an interference with TMR's goodwill and customer relationships, and will substantially harm TMR's reputation and the TMR Trademarks as a source of high quality products as well as dilute the substantial value of the TMR Trademarks; and (iii) Defendant's wrongful conduct and the damages resulting to TMR, are continuing.

61.     Accordingly, TMR is entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1116(a), and to an order under 15 U.S.C. § 1118 directing the impound of all copies of infringing products. TMR also is entitled, *inter alia*, to the cost of corrective advertising.

### THIRD CLAIM FOR RELIEF
### (Trademark Infringement Under Utah Law)
### (Utah Code § 70-3a-402)

62.     Plaintiff realleges and incorporates by reference the allegations of paragraph 1 through 61, as set forth herein.

63.     Plaintiff is the registrant and sole and exclusive owner of the TMR Trademarks referred to in paragraph 14.

64.     MRI's conduct, all without the authorization, license or permission of TMR, is likely to cause confusion, mistake, or deception as to the source, origin or approval of the Defendant's services, in violation of Utah Code § 70-3a-402.

65. Defendant should be ordered to pay to TMR three time Defendant's profits from, and three times all damages suffered by TMR, by reason of the Defendat's wrongful conduct referenced herein.

## FOURTH CLAIM FOR RELIEF
### (Unfair Competition)
### (Utah Code § 13-5a-103 and Common Law)

66. Plaintiff realleges and incorporates by reference the allegations in paragraph 1 through 65, as set forth herein.

67. Defendant's acts have impaired TMR's goodwill, have created a likelihood of confusion, and have otherwise adversely affected TMR's business and reputation by use of unfair and fraudulent business practices, namely, Defendant's wrongful use of the TMR Trademarks for commercial gain. These acts were and are intentional, unfair and infringe upon TMR Trademarks, constituting unfair competition and unfair business practices under Utah Code § 13-5a-101 et seq., the analogous statutes of other states, and Utah common law.

68. Absent injunctive relief, TMR has no means by which to control Defendant's deceptive and confusing use of the TMR Trademarks. TMR is thus entitled to injunctive relief prohibiting Defendant from continuing such acts of unfair competition. TMR also is entitled to recover Defendant's profits, as well as TMR's costs and attorneys' fees.

69. In performing the conduct described herein, Defendant acted despicably and with oppression, fraud or malice, intending to injure Plaintiff and wrongfully to advantage itself at Plaintiff's expense. By reason thereof, Plaintiff is entitled to an award of punitive and exemplary

damages against Defendant, sufficient to punish and deter them from engaging in such conduct in the future, in an amount to be ascertained at trial.

### FIFTH CLAIM FOR RELIEF
### (Breach of Contract)

70. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 69, as set forth herein.

71. MRI entered into Supply Agreements with TMR in which it agreed "not to intentionally use, employ or attempt to register any trademark or trade name which it knows or should know to be confusingly similar to the trademarks or trade names" of TMR.

72. The Supply Agreements further provided a right to Notice of Default and Opportunity to Cure any alleged defaults before termination or effective termination of the Agreement. The Supply Agreement expressly states that with respect to other remedies set forth in any sections of the Agreement, "if a section does not state whether notice must be given or not, then the standard shall be that notice is required."

73. Section 2.1 of the Supply Agreement grants TMR the exclusive right to sell Product to Health Food Stores in the United States.

74. Pursuant to Exhibits A and D of the Supply Agreement, MRI agreed that "all of TMR's customers existing as of the effective date of this Agreement shall be grandfathered into this contract and shall be considered within the Exclusive Territory i.e. MRI will not knowingly solicit or sell to those customers . . . ."

75. TMR has performed all conditions and terms of the Supply Agreements.

76. MRI breached the Supply Agreement by engaging in the following acts:

   A. MRI facilitated the registration of the TMR Trademarks in China and other countries without the prior written consent of TMR;

   B. MRI used the TMR Trademarks in an unauthorized manner to divert customers and sales from TMR, including but not limited to the inclusion of the TMR Trademarks on MRI's website, the distribution of advertising materials containing references to the TMR Trademarks and other uses not authorized under the limited license granted to MRI;

   C. MRI solicited TMR customers in breach of Section 2.1 of the Agreement as defined and clarified by Exhibit A and D;

   D. MRI formed Ionic Health Solutions as a Health Food Store to market and sell Products in TMR's Exclusive Territory, including but not limited to sales to former Health Food Store customers of TMR;

   E. MRI ceased all shipments of products to TMR without providing TMR with Notice and an Opportunity to Cure as required by the Agreement;

   F. MRI terminated TMR's bulk licenses under Section 2.4 of the Supply Agreement without providing TMR with Notice and an Opportunity to Cure.

77. As a direct result of MRI's aforesaid breaches, TMR has suffered damages in an amount to be established at trial.

WHEREFORE, Plaintiff prays for the following relief:

1. That this Court enter a judgment as follows against Defendant:

   A. That Defendant has infringed the rights of TMR in the TMR Trademarks;

B.  That Defendant has used false designations of origin, and false representations in commerce, which are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship or approval under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a));

C.  That Defendant has used unfair and fraudulent business practices adversely to affect Plaintiff's rights under Utah Code § 13-5a-101 et seq.;

D.  That Defendant has breached the agreement with TMR; and

E.  That Defendant's license to use the TMR Trademarks is terminated.

2.  That this Court issue a permanent injunction against Defendant and its officers, agents, servants, employees, and all others in active concert or participation with them with notice thereof, enjoining and restraining them from the following:

A.  Using TMR's Trademarks on the MRI website or to otherwise use such marks to promote, sell, offer for sale, advertise or distribute any goods or products;

B.  Engaging in any other activity constituting an infringement of: (i) the TMR Trademarks; (ii) any other of TMR's rights in the TMR Trademarks; (iii) TMR's right to use or to exploit the TMR Trademarks; and (iv) engaging in any other activity which dilutes, blurs, tarnishes or infringes the TMR Trademarks, name, reputation or goodwill;

C.  Using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, erroneously to believe either that any service or product manufactured, distributed, offered for sale, sold, licensed, sponsored, approved, endorsed, or authorized by Defendant was manufactured, distributed, offered for sale,

17

466578.1

sold, licensed, sponsored, approved, endorsed or authorized by TMR, or that Defendant or its affiliates are affiliated, connected and/or associated with TMR; and

        D.     Assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs A through C above.

        3.     That this Court order Defendant to deliver up to Plaintiff all materials which violate the foregoing in Defendant's possession, custody or control.

        4.     That this Court order Defendant to pay to Plaintiff's general, special, actual and/or statutory damages, according to proof at trial.

        5.     That this Court order Defendant to pay restitution of their profits from the above-described activities.

        6.     That the damages awarded to Plaintiff for Defendant's infringement be trebled pursuant to 15 U.S.C. § 1117(b) and Utah Code § 70-3a-404.

        7.     That this Court order Defendant to pay Plaintiff both the costs of this action and the reasonable attorneys' fees incurred by Plaintiff in prosecuting this action.

        8.     For punitive and exemplary damages.

        9.     For pre-judgment and post-judgment interest.

        10.    For such other relief as this Court deems just, equitable and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED this 15 day of June, 2006.

                                              MARK L. CALLISTER
CALLISTER NEBEKER & McCULLOUGH
*Attorneys for Plaintiff Trace Minerals Research, L.C.*

Plaintiff's Address:

1996 West 3300 South
Ogden, Utah 84401

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Trace Minerals Research

**(b)** County of Residence of First Listed Plaintiff: Weber
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Mark L. Callister, Callister Nebeker & McCullough, Salt Lake City, Utah  530-7300

## DEFENDANTS
Minerals Resources International, Inc.

County of Residence of First Listed Defendant: Weber
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

FILED U.S. DISTRICT COURT
2006 JUN 15 P 1:52
DISTRICT OF UTAH
BY: _____ DEPUTY CLERK

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | | | |
| | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. Sections 1114 and 1125(a)

Brief description of cause:
Trademark infringement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE: June 9, 2006

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____

Judge Tena Campbell
DECK TYPE: Civil
DATE STAMP: 06/15/2006 @ 13:51:50
CASE NUMBER: 1:06CV00068  TC